IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------

KEITH HAYWOOD,

                              Plaintiff,

              v.                                    Civil Action No.
                                                    9:01-CV-0225(LEK/DEP)
J. WOODS, *et al.,*

                              Defendants.

--------------------------------------------------------------------

<u>APPEARANCES</u>:                           <u>OF COUNSEL</u>:

<u>FOR PLAINTIFFS</u>:

KEITH HAYWOOD, *Pro Se*


<u>FOR DEFENDANTS</u>:

HON. ANDREW M. CUOMO              RISA L. VIGLUCCI, ESQ.
Attorney General
State of New York
The Capitol
Litigation Bureau
Albany, NY 12224-0341

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE


<u>SUPPLEMENTAL REPORT AND RECOMMENDATION</u>

        Plaintiff Keith Haywood, a New York State prison inmate who is

proceeding *pro se* and *in forma pauperis*, has commenced this action

pursuant to 42 U.S.C. § 1983 alleging the deprivation of his civil rights. In his complaint, plaintiff maintains that he was placed at risk when falsely identified by prison officials as having given testimony against another inmate confined within the same prison facility, and that as a result of that misinformation he was threatened and harassed by fellow inmates, without action having been taken to protect him from such conduct despite sending repeated letters to prison officials complaining of his circumstances.[1,2]

Following the close of discovery, the four defendants named in plaintiff's amended complaint and remaining in the action moved for the entry of summary judgment dismissing plaintiff's claims on a variety of

---

[1]   Plaintiff's complaint also asserted a pendent state common law claim of defamation, based upon the false report of prison officials concerning his testimony. That claim, however, has been dismissed, and the dismissal was upheld on appeal to the United States Court of Appeals for the Second Circuit. *See* Dkt. Nos. 42, 45 and 49.

[2]   One of plaintiff Haywood's fellow inmates, Troy Todman, was listed as a co-plaintiff when the action was originally filed. In their complaint, the plaintiffs asserted that after coming to the aid of Haywood and attempting to convince other inmates that Haywood in fact had not testified against a fellow prisoner, Todman too experienced the wrath of others confined within the facility. The claims asserted in the action by plaintiff Todman were dismissed based on defendants' motion for summary judgment, and that dismissal was affirmed on appeal, based upon Todman's failure to file objections to my initial report and recommendation. *See* Dkt. No. 49 at 2, n.1.

2

grounds.[3]  Based upon a report and recommendation which I issued, that

motion was granted by District Judge Lawrence E. Kahn, and plaintiff's

complaint was dismissed in its entirety.  A subsequent appeal by the

plaintiff to the United States Court of Appeals for the Second Circuit,

however, led to a partial reversal of the resulting judgment and the return

of the matter to this court.  In remanding the case, the Second Circuit

instructed this court to consider plaintiff's claim that prison officials were

apprised of, but failed to act to protect him from, threats of harm from

fellow inmates, and specifically to focus upon whether those officials were

aware of plaintiff's complaints in this regard but nonetheless were

deliberately indifferent to his plight.

Having reviewed the record before the court in light of the Second

Circuit's decision, I recommend a finding that genuine, material triable

questions of fact exist surrounding these issues, thereby precluding the

entry of summary judgment dismissing the remaining portions of plaintiff's

claims on the merits.  I further recommend, however, that the remaining

portions of plaintiff's claims nonetheless be dismissed on procedural

---

[3]      Various other defendants named in plaintiff's original complaint, including
a John Doe defendant, were dropped with the filing of plaintiff's amended complaint
prior to their appearance in the action.

grounds due to plaintiff's failure to fully exhaust his administrative remedies prior to commencing this action.

I.      BACKGROUND

Plaintiff is an inmate entrusted to the custody of the New York State Department of Correctional Services.  Amended Complaint (Dkt. No. 7) ¶ 5.  At the times relevant to his claims, Haywood was incarcerated within the Clinton Correctional Facility ("Clinton"), located in Dannemora, New York, and was assigned to the facility's E-Block – a unit ordinarily reserved for inmates in keeplock confinement as well as those in protective custody, both on a voluntary basis and otherwise.  *Id.*; *see also* Plaintiff's Objections to Report and Recommendation (Dkt. No. 43) at p. 7 (unnumbered).

The circumstances giving rise to plaintiff's claims were set in motion on September 8, 2000 when T. Welch, a corrections counselor at Clinton, authored a memorandum regarding Sterling Ayers, another inmate at the facility.[4]  *See* Viglucci Aff. (Dkt. No. 37) Exh. E.  That memorandum identified Haywood and three other Clinton inmates as being listed in prison records as "separatees" of Ayers, and on that basis recommended

---

[4]      Corrections Counselor Welch is not a defendant in this action.

that Ayers be placed in involuntary protective custody ("IPC").[5]  *Id.*  As a result of the Welch memorandum defendant G. Shepler, a corrections sergeant at the facility, recommended that Ayers be placed in IPC. Viglucci Aff. (Dkt. No. 37) Exh. E.  The IPC recommendation, like the Welch memorandum, identified Haywood and the three other inmates as potentially antagonistic to Ayers.  *Id.*  Unfortunately, the recommendation went on to note that all four had "testified against inmate Ayers in a Tier [III] hearing" – a statement which was later determined to be untrue.[6] Viglucci Aff. (Dkt. No. 37) Exh. E.  According to his complaint, as a direct consequence of the memorandum Haywood was labeled as an informant and, beginning on or about September 11, 2000 and continuing thereafter until his transfer out of E-Block in November of that year, he received threats, or "kites", was subject to extortion from other inmates, and additionally was the target of objects and human waste thrown at him as he passed by other inmates' cells.[7]  Amended Complaint (Dkt. No. 7) ¶¶

---

[5]        According to prison officials, a "separatee list" represents a means of alerting corrections officers to problems existing between certain inmates.  Viglucci Aff. (Dkt. No. 37) Exh. D (Shepler Aff.) ¶ 6.  Prisoners can be listed on separatee lists for a variety of reasons, including as a result of fights, homosexual contact, or prior joint criminal activity.  *Id.*

[6]        While it appears clear that Haywood did not testify against Ayers, nothing in the record undermines the conclusion that Haywood and the three other inmates identified in the two memoranda at issue were known enemies of Ayers.

[7]        There is evidence in the record suggesting that the hostilities experienced by Haywood from fellow inmates predated this incident.  On July 24, 2000 an IPC

17-21.

As a result of his experience, plaintiff filed a grievance on September 17, 2001 concerning the false information contained in the Shepler IPC recommendation.  Viglucci Aff. (Dkt. No. 37) Exh. E.  That grievance led to an investigation into the matter, conducted by defendant R. Faulkner, a corrections captain.  *Id.*; *see also id.* Exh. C (Faulkner Aff.) ¶¶ 3, 5-12.  Based upon his investigation, defendant Faulkner found that the information contained in the Shepler memorandum identifying Haywood as having testified against Ayers was mistaken, and Haywood was advised that the investigation had revealed this mistake on Shepler's part.  Viglucci Aff. (Dkt. No. 37) Exh. C (Faulkner Aff.) ¶¶ 12-13, Exh. E.  The inmate grievance review committee ("IGRC") apparently determined, based upon this finding, that no further action was necessary or appropriate.[8]  *See*

---

recommendation was issued with regard to Haywood, based upon the fact that his cell apparently was set on fire by other inmates.  Viglucci Aff. (Dkt. No. 37) Exhs. C (Faulkner Aff.) ¶ 9, G.  Upon review of the IPC determination it was noted in a decision signed by the facility superintendent "that inmate Haywood has 'many' enemies (unknown) in the Block".  *Id.* Exh. G.

[8]     In their initial legal memorandum, defendants asserted that in order to rectify the situation created by the mistake, Ayers was later advised at a hearing concerning the IPC placement that the information contained within the recommendation was incorrect, and that the inmates listed had not in fact testified against him. Defendants' Memorandum (Dkt. No. 39) at p. 4.  While there is no reason to question this statement, it draws no evidentiary support from the record now before the court, and thus it cannot be accepted as established for purposes of the pending motion.  *Giannulo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) (citing *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 74 (2d Cir. 2001)).

Viglucci Aff. (Dkt. No. 37) Exh. E.

Plaintiff complained in writing to Sergeant Shepler on September 11, 2000, expressing concern for his safety and attaching some of the threatening written communications which he had received, presumably from fellow inmates.  Haywood Aff. (Dkt. No. 40) ¶ 10 and Exh. A.  That letter was followed by another, sent by the plaintiff on September 16, 2000 to Lieutenant Miller, with copies to Deputy Superintendent J. Woods and Sergeant Shepler, reiterating his concerns and requesting either protection or a transfer out of E-Block.  *Id.* at ¶ 11 and Exh. B.  Similar letters were sent by Haywood, one to Lieutenant Miller, on September 26, 2000, requesting a transfer from E-Block or out of Clinton; another on October 5, 2000, also to Lieutenant Miller, requesting a transfer out of the cell block; and a third on October 31, 2000 to Sergeant Shepler, suggesting that Haywood would rather take his chances in the general population than to remain confined within IPC in E-Block.  *Id.* ¶¶ 11, 13-15 and Exhs. C, D, and E.   Despite those letters, it was not until plaintiff's IPC order was administratively reversed on November 3, 2000 by Donald D. Selsky, the Department of Correctional Services ("DOCS") Director of Special Housing/Inmate Disciplinary Program, that plaintiff was released from IPC and transferred out of E-Block.  Haywood Aff. (Dkt. No. 40) ¶ 19 and Exh. I.

II.    <u>PROCEDURAL HISTORY</u>

Plaintiff commenced this action on February 14, 2001, and later submitted an amended complaint which was accepted for filing on April 16, 2001.  Dkt. Nos. 1, 7.  Named as defendants in plaintiff's amended complaint are four individuals all of whom were employed by the DOCS and stationed at Clinton at the relevant times, including J. Miller, a corrections lieutenant; G. Shepler, a corrections sergeant; J. Woods, the deputy superintendent of security; and R. Faulkner, a corrections captain. Dkt. No. 7.

On June 10, 2002, defendants moved seeking the entry of summary judgment in their favor dismissing plaintiff's claims on a variety of bases. Dkt. Nos. 36-39.  Defendants also argued that plaintiff's claims against them are legally deficient both on the merits and based upon their lack of personal involvement, and additionally maintained that in any event they were entitled to qualified immunity shielding them from liability.  *Id.* Following the Haywood's submission of papers in opposition to the defendants' motion, *see* Dkt. No. 40, the matter was referred to me for the issuance of a report and recommendation in connection with the motion, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See also* Fed. R. Civ. P. 72(b).

As a result of the referral, I issued a report on March 20, 2003,

recommending dismissal of plaintiff's complaint in its entirety.  Dkt. No. 42.

In it, *inter alia,* I recommended a finding that the mistake of prison officials

which was of concern to plaintiff Haywood was promptly investigated and

remedied, without potentially significant adverse consequences.  Based

upon my finding of no evidence of malicious intent on the part of those

corrections employees involved, I concluded that no constitutional

violation was established.  Additionally, I recommended dismissal of

plaintiff's claims against defendants Miller, Woods and Faulkner based

upon the lack of any showing by the plaintiff of their personal involvement

in the relevant occurrences, and found each of the four defendants was

also entitled to qualified immunity.  Dkt. No. 42.  After the filing of

objections by the plaintiff, *see* Dkt. No. 43, that report and

recommendation was adopted in full by District Judge Lawrence E. Kahn

on July 9, 2003, and judgment was entered dismissing plaintiff's complaint

in its entirety.  Dkt. Nos. 45, 46.

As a result of an appeal by the plaintiff to that court, the United

States Court of Appeals for the Second Circuit issued an unpublished

summary order on April 28, 2006 affirming this court's judgment in part,

but otherwise vacating the judgment and remanding the matter for further

consideration.  Dkt. No. 49.  In its decision, the Second Circuit instructed

the court to address issues surrounding plaintiff's claims against prison

officials at Clinton, including defendants Miller and Shepler, based upon

their failure to protect him from harassment and abuse from fellow

inmates.  *Id.*  The court specifically directed that on remand, consideration

be given to

> whether Haywood's letters sufficiently informed
> Miller and Shepler of the conditions Haywood
> complained of, whether the defendants were
> sufficiently personally involved such that they may
> be held liable for their alleged failure to remedy the
> conditions, and whether Haywood has alleged
> sufficient facts to create a triable issue of fact as to
> whether the defendants acted with deliberate
> indifference.

*Id.* at 3-4.  The matter has since been referred back to me by District

Judge Kahn for further consideration.  Dkt. No. 50.

III.    DISCUSSION

  A.    Summary Judgment Standard

  Summary judgment is governed by Rule 56 of the Federal Rules of

Civil Procedure.  Under that provision, summary judgment is warranted

when "the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits . . . show that there is no

genuine issue as to any material fact and that the moving party is entitled

to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986);

*Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).  A fact is "material", for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).  A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.  Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

When summary judgment is sought, the moving party bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion.  *Anderson*, 477 U.S. at 250 n.4, 106 S. Ct. at 2511 n.4; *Security Ins.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for

trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party.  *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998).  Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor."  *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S. Ct. at 2511 (stating that summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict.").

B.   <u>Failure to Protect</u>

Plaintiff's claim against prison officials growing out of their alleged failure to protect him from threats and harassment from fellow inmates arises principally under the Eighth Amendment, and is accordingly analyzed under a well-defined body of jurisprudence outlining the contours of the protections which it affords to sentenced prisoners.[9]

---

[9]      Plaintiff's failure to protect claim also potentially implicates the Fourteenth Amendment's substantive due process clause.  While the requisite mental state necessary for establishing a failure to protect cause of action under the Fourteenth Amendment is somewhat ill-defined, at a minimum it is apparent that in order to be legally cognizable such a claim must involve actions which transcend mere negligence.

The Eighth Amendment's prohibition of cruel and unusual punishment encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble,* 429 U.S. 97, 102-03, 97 S. Ct. 285, 290, 291 (1976) (quotations omitted); *see also Whitley v. Albers,* 475 U.S. 312, 319, 106 S. Ct. 1076, 1084 (1986) (citing, *inter alia*, *Estelle*).  While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement; thus the conditions of an inmate's confinement are subject to Eighth Amendment scrutiny.  *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S. Ct. 1970, 1976 (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S. Ct. 2392, 2400 (1981)).

A claim alleging that prison conditions violate the Eighth Amendment must satisfy both objective and subjective requirements, the conditions must be "sufficiently serious" from an objective point of view, and the

---

*Davidson v. Cannon*, 474 U.S. 344, 347-48, 106 S. Ct. 668, 670 (1986) (lack of due care simply does not approach the sort of abusive government conduct that the Due Process Clause was designed to prevent); *Daniels v. Williams*, 474 U.S. 327, 328, 106 S. Ct. 662, 663 (1986) (same); *Morales v. New York State Dep't of Corr.*, 842 F.2d 27, 30 (2d Cir. 1988) (section 1983 does not provide cause of action for negligent failure of prison officials to protect an inmate from injury); *Abdul-Matiyn v. New York State Dep't of Corr. Servs.*, 871 F. Supp. 1542, 1546-47 (N.D.N.Y. 1994) (Chin, J.) (citing *Morales*).  In light of my finding of the existence of genuine issues of material fact surrounding plaintiff's failure to protect claim under the Eighth Amendment, I have not separately addressed that cause of action in the context of the Fourteenth Amendment's due process clause.

13

plaintiff must demonstrate that prison officials acted subjectively with "deliberate indifference."  *See Leach v. Dufrain,* 103 F. Supp. 2d 542, 546 (N.D.N.Y. 2000) (Kahn, J.) (citing *Wilson v. Seiter*, 501 U.S. 294, 111 S. Ct. 2321 (1991)); *Waldo v. Goord,* No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, D.J. and Homer, M.J.); *see also*, *generally*, *Wilson*, 501 U.S. at 297-98, 111 S. Ct. at 2323.  Deliberate indifference exists if an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979; *Leach*, 103 F. Supp. 2d at 546 (citing *Farmer*); *Waldo*, 1998 WL 713809, at *2 (same).

Unquestionably, the Eighth Amendment's protection requires that prison officials take reasonable measures to guarantee the safety of inmates; this duty includes the obligation to protect prisoners from harm caused by fellow inmates.  *Farmer*, 511 U.S. at 833-34, 114 S. Ct. at 1976-77 (citations omitted); *see also Matthews v. Armitage*, 36 F. Supp. 2d 121, 124 (N.D.N.Y. 1999) (Homer, M.J.) (citing, *inter alia*, *Farmer*). When examining a failure to protect claim under the Eighth Amendment, a court must determine whether the inmate has demonstrated that 1) he or she was incarcerated under conditions posing a substantial risk of serious

harm, and 2) prison officials exhibited deliberate indifference to the

inmate's plight.  *Farmer*, 511 U.S. at 834, 837, 114 S. Ct. at 1977, 1979;

*Matthews*, 36 F. Supp. 2d at 124-25; *Coronado v. Lefevre*, 886 F. Supp.

220, 224 (N.D.N.Y. 1995) (Scullin, J.).  As can be seen, this analysis

entails both an objective and a subjective inquiry.

1.   <u>Objective Element</u>

In this instance plaintiff does not allege that he suffered physical

injury as a result of defendants' actions, perhaps more appropriately

characterized in this case as inaction.  Instead, because of the mistake

made, plaintiff claims that he was retaliated against by other inmates,

having been subjected to verbal abuse and threats of bodily harm; the

throwing of objects, including human waste, as he passed various cells;

the "extortion" of his food by other inmates in return for plaintiff's safety;

and the loss of his daily recreation, due to threats by other inmates of

bodily harm to be incurred in the yard.

In their original motion, defendants disregarded most of plaintiff's

allegations of harm, choosing instead to acknowledge only the verbal

threats and harassment by other inmates.  In doing so, they noted that

allegations of verbal harassment alone do not present the degree of

substantial threat of serious harm necessary to support a failure to protect

claim.  *E.g., Desulma v. City of New York,* No. 98Civ.2078, 2001 WL

798002, at *6-7 (S.D.N.Y. July 6, 2001), *adopted*, 98 Civ. 2078, Dkt. No. 59 (S.D.N.Y. Dec. 11, 2001), *aff'd*, Dkt. No. 63 (2d Cir. June 24, 2002). Defendants' motion overlooked the fact that Haywood's claims are not limited to mere verbal harassment, instead also including other alleged offenses against his person including the throwing of human waste and other objects, as well as threats of harm.  As plaintiff points out, an inmate need not wait until actual attack occurs to obtain relief.  *See Benefield v. McDowall*, 241 F.3d 1267, 1270-72 (10th Cir. 2001).

The Tenth Circuit decision in *Benefield* is instructive.  There, the government took a similar position to that espoused by the defendants in this matter – that verbal harassment alone and/or the "'psychological injury'" caused by living in fear of other inmates is not compensable under the Eighth Amendment.[10]  *Benefield*, 241 F.3d at 1271.  The Tenth Circuit noted, however, that the Eighth Amendment reaches conduct that "'is sure or very likely to cause' serious injury at the hands of other inmates."  *Id.* at 1272 (quoting *Helling v. McKinney*, 509 U.S. 25, 33, 113 S. Ct. 2475, 2480-81 (1993)).  Noting that whether damages would lie in the absence of physical injury was a more difficult question, the court held that

---

[10]     Plaintiff's allegations in the instant case are more severe than those at issue in *Benefield,* the court specifically noting that the plaintiff in that case did not allege verbal threats by other inmates, but rather only verbal harassment by a corrections officer in labeling him a "snitch."  *See* 241 F.3d at 1271-72.

"violation of the Eighth Amendment does not turn on the type [of] relief sought." *Id.* at 1272.

Defendants' more recent tactic, following remand, includes efforts to convince the court that despite plaintiff's claim to the contrary, the bulk of his allegations are not credible.  In support of this new strategy, both defendants Shepler and Miller have submitted declarations suggesting that because of the physical configuration of the Clinton E-block, in which the relevant events are alleged to have occurred, it is impossible for plaintiff to have been harassed or assaulted by other inmates, undetected by prison officials.  *See, e.g.,* Shepler Decl. (Dkt. No. 54-5) ¶¶ 3-5, 9-10; Miller Decl. (Dkt. No. 54-4) ¶¶ 4-5.  However convincing the contents of the Miller and Shepler declarations may be in demonstrating that plaintiff has, at best, hyperbolized, and at worst fabricated, his version of the relevant events, the court is not positioned to conclude, based upon those declarations, given the contrary sworn statements of the plaintiff, that no reasonable factfinder could believe that the plaintiff was subjected to verbal and physical harassment as a result of the relevant events.  *See Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.  Simply stated, based upon the record now before the court I am not prepared to state, as a matter of law, that plaintiff cannot establish the objective element of his Eighth Amendment claim.

17

2.      Subjective Complaint

Subjectively, to prevail on a failure to protect claim a plaintiff must establish that the named defendant acted with deliberate indifference to the inmate's health and safety.  *Farmer*, 511 U.S. at 834, 837, 114 S. Ct. at 1977, 1979; *Matthews*, 36 F. Supp. 2d at 124-25.  In this regard, proof of a defendant's personal involvement in the alleged deliberate indifference is required to establish his or her liability for failure to protect under the Eighth Amendment.  *Hernandez v. Keane*, 341 F.2d 137, 144 (2d Cir. 2003) (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).  In this context, deliberate indifference means what that phrase suggests – that a particular defendant at issue had knowledge of circumstances presenting potential danger to an inmate but, although positioned to do so, took no measures reasonably calculated to address that danger.  *Farmer,* 511 U.S. at 834, 837, 114 S. Ct. at 1977-79 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

Upon remand, as was previously noted, defendants Shepler and Miller have each submitted declarations focused upon the remaining issue – that is, their personal involvement in the alleged failure of prison officials to protect plaintiff from harm from fellow inmates.  In his declaration, defendant Shepler, a corrections sergeant at Clinton, states that by virtue

of his position he would have been aware of any harassment or assaults against the plaintiff, but was wholly unaware of any such claims. Shepler Decl. (Dkt. No. 54-5) ¶¶ 2-5. Shepler also denies having received any letters from the plaintiff despite plaintiff's claims to the contrary. *Id.* ¶ 6. For his part, in his declaration defendant Miller, an administrative lieutenant at Clinton, similarly denies any knowledge of Haywood's claims of harassment and assault, and while acknowledging receipt of plaintiff's letter dated September 11, 2000, denies awareness of any of the other letters alleged by plaintiff to have been sent regarding the matters. Miller Decl. (Dkt. No. 54-4) ¶¶ 2-9.

It is certainly true, as defendants have argued, that the record contains evidence suggesting the plaintiff did not feel himself to be in jeopardy of harm at the hands of fellow prisoners. On November 8, 2000 Haywood wrote to defendant J. Woods, the deputy superintendent of security services at Clinton, stating the following: "I feel I do not need protection at this time. If I feel I need protection in the future, I will so inform you." *See* Viglucci Aff. (Dkt. No. 37) Exh. F. Additionally, in their statement pursuant to Local Rule 7.1(a)(3) defendants asserted that in communications by plaintiff to Lieutenant Miller on September 11, 2000, and a grievance filed with the Inmate Grievance Committee ("IGC") at Clinton, plaintiff did not express any concern for his safety nor did he

request protective custody, a statement admitted by the plaintiff.  *See*

Defendants' Local Rule 7.1(a)(3) Statement (Dkt. No. 38) ¶ 19; Plaintiff's

Responding Local Rule 7.1(a)(3) Statement (Dkt. No. 40) ¶ 1.

Despite this isolated statement which, plaintiff contends, has been

taken out of context, from the several other written communications

allegedly authored by the plaintiff and sent to defendants Miller and

Shepler, it is clear that prison officials were or reasonably should have

been aware in September and October of 2000 of plaintiff's claims

regarding extortion, threats, and harassment by fellow inmates and his

corresponding, repeated requests for a transfer out of E-Block into D-

Block, the facility's special housing unit ("SHU"), or into the general

population, or transfer altogether out of Clinton.  Accordingly, once again I

decline defendants' invitation to accept their version, however plausible it

may be, in the face of plaintiff's claim to have written letters to defendants

Miller and Shepler alerting them to his plight.  *See Treglia*, 313 F.3d at

719.

In addition to disclaiming receipt of plaintiff's letters, defendants also

suggest that even assuming, for the sake of argument, that they did

receive letters advising them of his circumstances, the mere act of

ignoring those letters alone does not suffice to establish liability.  In

support of that contention, *inter alia,* defendants urge a line of cases

suggesting that personal involvement on the part of supervisory employees, including the Commissioner of the DOCS, cannot be established by the mere ignoring of prisoner complaints. *See, e.g., Magee v. Childs,* No. 04-CV-1089, 2006 U.S. Dist. LEXIS 14571, at *304 (N.D.N.Y. Feb. 27, 2006) (Treece, M.J.)  While such cases may have applicability generally, they do not translate well in the context of an Eighth Amendment failure to protect claim where the letters alerting prison officials of an inmate's plight are directed to local prison officials who plainly are, one may properly infer, positioned to take steps to protect the prison inmate; indeed, this is the very essence of an Eighth Amendment failure to protect a claim.  *See Farmer*, 511 U.S. at 832-33, 114 S. Ct. at 1976 (noting that the Eighth Amendment imposes duties on prison officials to "'take reasonable measures to guarantee the safety of the inmates'") (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27, 104 S. Ct. 3194, 3200 (1984)).  While the record is unclear as to what, if any, steps each of these individuals could have taken to address plaintiff's complaints, a reasonable factfinder could conclude that the absence of any action should result in a finding of their deliberate indifference to the danger presented.  Under these circumstances, I find the existence of genuine issues of material fact with respect to the subjective element of plaintiff's

failure to protect a claim as against defendants Shepler and Miller.[11]

C.    Exhaustion of Remedies

In its remand to this court, the Second Circuit intimated that plaintiff's

failure to protect claim may be procedurally barred.  In their answer to

plaintiff's amended complaint, defendants have asserted Haywood's

failure to exhaust administrative remedies as one of several affirmative

defenses listed, *see* Answer (Dkt. No. 15) ¶ 16, and, accordingly, have

properly preserved the issue for determination in the case.[12]  In their most

recent submission, defendants ask the court to conclude, as a matter of

law, that plaintiff's failure to protect claim is barred based upon his failure

_____

[11]    In my prior report, I recommended that plaintiff's claims against
defendant Miller be dismissed based upon lack of personal involvement.  Having
reviewed the matter with the benefit of the Second Circuit's decision, and defendant
Miller's supplemental declaration, I conclude that there would be genuinely disputed
issues of material fact for resolution by a jury before it could be determined whether
defendant Miller had potential liability toward the plaintiff for failure to protect.
Accordingly, to the extent that the court's prior determination could be regarded as
dismissing plaintiff's failure to protect claims against defendant Miller on this basis, I
recommend that the court reverse its position on this issue as it is empowered to do
under the circumstances.  *See* Fed. R. Civ. P. 60(b)(6) (allowing district court to grant
relief from a judgment for "any . . . reason justifying relief from the operation of the
judgment"); *see also Fort Knox Music Inc. v. Baptiste*, 257 F.3d 108, 110-11 (2d Cir.
2001) (asserting that district court has the power to *sua sponte* vacate its original
judgment following remand, as long as the appellate court has not decided that issue
on appeal) (citing Fed. R. Civ. P. 60(b)(6) and *International Controls Corp. v. Vesco*,
556 F.2d 665, 668 n.2 (2d Cir. 1977) (stating that a district court has the "power to
decide *sua sponte* whether its judgment should be vacated, provided all parties ha[ve]
notice")).

[12]    In its recent decision in *Jones v. Bock,* the Supreme Court resolved a
split among the courts and determined that exhaustion of remedies constitutes an
affirmative defense that must be pleaded by a defendant and, consequently, may be
waived if not properly preserved. __ U.S. __, 127 S. Ct. 910-19 (2007).

to exhaust.

The Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110, Stat. 1321 (1996), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  It is by now well-recognized that New York prison inmates have available to them a three-tiered formal grievance procedure, established in accordance with the statutory scheme set forth in N.Y. Correction Law § 139 and 7 N.Y.C.R.R. Part 701 ("Inmate Grievance Program" or "IGP").  *See, e.g., Soto v. Elston,* 993 F. Supp. 163, 164 (W.D.N.Y. 1998).  To fully exhaust his or her remedies an inmate must complete all three levels of this procedure.  *E.g., Ryan v. Lyder*, No. 01 Civ. 10057, 2002 WL 1990780, at *2 (S.D.N.Y. Aug. 28, 2002).  Under New York's inmate grievance scheme, the process is initiated by the filing of a grievance with the facility's Inmate Grievance Resolution Committee ("IGRC").  7 N.Y.C.R.R. §§ 701.1(a), (c).  If the inmate is dissatisfied with the result at that initial stage, he or she must appeal to the facility superintendent.  *Id.* § 701.1(c).  Review of a facility superintendent's ruling must be sought from the DOCS Central Office Review Committee ("CORC") in Albany.  *Id.* § 701.1(c).

The grievance prepared by the plaintiff on September 17, 2000 and filed shortly thereafter, is specific in its focus upon the mistaken suggestion that he testified against inmate Ayers at a disciplinary hearing, resulting in his being labeled as a "'RAT' by the other prisoners in the jail." Viglucci Aff. (Dkt. No. 37) Exh. E.  As relief, in that grievance Haywood sought rectification of the error and clarification as to the source of that information suggesting that he testified against fellow inmate Ayers.  *Id.* Plaintiff makes no mention in that grievance of the widespread harassment and assault claimed to have been suffered as a result of the mistake, nor does he request protection from his fellow inmates.  *Id.*

Even if plaintiff's grievance, liberally construed, could be considered to cover his failure to protect claims, that grievance was not pursued through completion prior to commencement of this action.  Indeed, plaintiff's grievance was not even decided by the Clinton Superintendent until November 20, 2000, following commencement of this action.  The fact that plaintiff had not pursued the grievance process to completion prior to commencement of this action would alone provide a basis for dismissal of this claim.  *See Orta v. City of New York Dep't of Corr.*, No. 01 Civ. 10997, 2003 WL 548856, at *2-3 (S.D.N.Y. Feb. 25, 2003) (stating that in order to exhaust administrative remedies, plaintiff was required to proceed through all four levels of grievance procedure and his failure to

proceed through even one level warranted dismissal).  Moreover, the

evidence also reflects, largely due to clarification by prison officials that

plaintiff did not in fact testify against co-inmate Ayers and plaintiff failed to

pursue his complaint regarding failure to protect to the CORC.  This failure

precludes plaintiff from now asserting a claim based upon that inchoate

grievance.

Plaintiff asserts that he should not be held to the rigorous standards

which require proper exhaustion under the PLRA, as illuminated in last

year's Supreme Court decision in *Woodford v. Ngo,* __ U.S. __, 126 S. Ct.

2378 (2006).  Plaintiff asserts that this is so because the record discloses

more than ample indication of circumstances from which defendants'

awareness of his plight can be well-inferred.

Although prison officials were alerted to plaintiff's claims that he was

being harassed by fellow inmates, there is no indication that they were

also aware of, and had a proper opportunity to investigate, his contention

now raised – to the effect that prison officials did not take proper

measures to protect him from those matters.  Under these circumstances

plaintiff's complaints to prison officials can hardly be deemed as the

equivalent of a proper complaint to prison authorities regarding the failure

of corrections officials, particularly those within the E-Block at Clinton, to

protect him.

Having determined that no reasonable factfinder could conclude plaintiff succeeded in fulfilling his obligations under the PLRA to exhaust available, internal remedies within Clinton prior to pursuing his claim in this court of defendants' alleged failure to protect him from harm, I recommend dismissal of plaintiff's claims on this procedural basis.[13]

IV.   SUMMARY AND RECOMMENDATION

This matter is back before the court for a determination of whether there is a basis presented to find, as a matter of law, that the defendants in this action were not deliberately indifferent to circumstances presenting a substantial risk of serious harm to the plaintiff.  Although the record contains conflicting evidence on this score, there were several communications written by the plaintiff during September and October of 2000, to defendants Shepler, Miller and/or Woods advising them of plaintiff's fears and claims of retaliation and harassment by fellow inmates and requesting a transfer out of the E-Block.  Plaintiff's allegations regarding the failure of those defendants to act on the information set forth

---

[13]   I note that plaintiff has not alleged, nor is there any indication of, the presence of exceptional circumstances which would mitigate plaintiff's exhaustion requirement under the Second Circuit's cases, including those decided together in 2004.  *See*, *e.g.*, *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004); *Giano v. Goord*, 380 F.3d 670 (2d Cir. 2004); *Hemphill v. State of New York*, 380 F.3d 680 (2d Cir. 2004); *Johnson v. Testman*, 380 F.3d 691 (2d Cir. 2004); *Ortiz v. McBride*, 380 F.3d 649 (2d Cir. 2004).

in those letters present a genuine, triable issue of material fact and precludes a finding that no reasonable factfinder could conclude that they were deliberately indifferent and failed to protect him from known harm while incarcerated within the E-Block at Clinton.[14]  In view of my finding, as a matter of law, that plaintiff failed to fully exhaust available administrative remedies within Clinton before commencing this action claiming violation of his Eighth Amendment rights, however, I recommend that plaintiff's failure to protect claims be dismissed on this procedural basis without reaching their merits.

It is therefore hereby

RECOMMENDED that the remaining portion of defendants' motion (Dkt. No. 36-1) for summary judgment, related to plaintiff's failure to protect claims against defendants Woods, Miller and Shepler, be GRANTED, and that the remaining portions of plaintiff's complaint which survived this court's earlier determination and plaintiff's appeal to the Second Circuit be DISMISSED in their entirety.

---

[14]    The record is devoid of any evidence that plaintiff suffered a physical injury as a result of the complained of acts.  Consequently, he would be precluded from recovering compensatory damages for mental anguish and emotional distress, and instead is limited in his recovery to nominal damages and, if deemed appropriate, punitive damages.  42 U.S.C. § 1997e(e); *see Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002); *Kelsey v. County of Schoharie*, No. 04-CV-299, 2007 WL 603406, at *10 (N.D.N.Y. Feb. 21, 2007) (Kahn, J.) (citing *Thompson*); *see also* Report and Recommendation Dated March 20, 2003 (Dkt. No. 42) at 22-23.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.


Dated:      May 3, 2007
            Syracuse, NY


David E. Peebles
U.S. Magistrate Judge